IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HEATHER FULTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-0685-N |
| | § | |
| BED BATH & BEYOND, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Bed Bath & Beyond, Inc.'s ("BBB") Motion to Dismiss [11]. BBB contends Plaintiff Heather Fulton's ("Fulton") defamation claims must be dismissed because the alleged conduct either fails as a matter of law or did not cause Fulton harm. BBB submits that Fulton's claim for intentional infliction of emotional distress must fail because it is duplicative of her defamation claim and, duplicity notwithstanding, because the alleged conduct is not "extreme and outrageous" as a matter of law. With regard to Fulton's loss of consortium claim, BBB argues that Fulton cannot recover because the alleged conduct did not injure her husband. Finally, BBB contends Fulton's wrongful termination claim fails because Fulton was an at-will employee. Because "damages for loss of spousal consortium are not recoverable absent proof of physical injury," *Browning-Ferris Industries, Inc., v. Lieck*, 881 S.W.2d 288, 294 (Tex. 1994), the Court dismisses Fulton's loss of consortium claim, but otherwise denies the motion to dismiss.

# I. ORIGINS OF FULTON'S CLAIMS

On Monday, February 7, 2005, Roger Courson, a Loss Prevention Manager with BBB, arrived at BBB's Plano location to investigate missing funds.[1]  Because of Fulton's duties and involvement with the particular transactions in question, she was the primary suspect.  Throughout the course of several days, Fulton claims she was the only employee with whom Courson spoke and describes the conversations as heated and accusatory.  Fulton further claims that during the course of the investigation, district manager Mike Edwards contacted Fulton's husband, Melvin – also a store manager at BBB – advising him that it would be in Melvin's best interest to divorce Fulton because she was a thief and a drug user.  Fulton claims Edwards even contacted a divorce attorney on Melvin's behalf.   The investigation ended in Fulton's termination.  In April, 2005, Fulton learned that Melvin filed for divorce, due to the mental and financial stress caused by her termination.

Fulton filed this action, claiming defamation, intentional infliction of emotional distress, loss of consortium, and wrongful termination.  In support of her claim for defamation, Fulton alleges BBB falsely accused her of theft and drug use.  She claims BBB published these statements intentionally and with ill will and malice toward her.  She further alleges BBB terminated her without formal notification or the opportunity to respond.  Fulton finally alleges BBB falsely reported to the Texas Workforce Commission that Fulton was temporarily laid off, when in fact she had been terminated.  Fulton claims she has suffered

---

[1] As it must in this context, the Court accepts Fulton's allegations as true for purposes of the motion to dismiss.

extreme mental and financial damage as a direct and proximate cause of the alleged defamatory statements.

Fulton next seeks recovery for intentional infliction of emotional distress due to the unwarranted and intentional conduct of BBB – particularly, the manner of the investigation and the conversation between Mike Edwards and Melvin, in which Edwards accused Fulton of theft and drug use and encouraged divorce. Fulton claims she has suffered extreme mental anguish and has become depressed and humiliated. She attributes this to the intentional and false defamatory accusations made by BBB personnel.

Fulton also seeks recovery for loss of consortium. In April, 2005, Melvin informed Fulton that he was filing for divorce due to the mental and financial stress caused by her termination. Fulton claims Melvin filed for divorce as a direct result of the conversation between him and Mike Edwards, and notes that Melvin retained the very attorney Mike Edwards suggested in their conversation. As a result of the alleged conduct, Fulton claims her marriage is damaged and she and her daughter have been deprived of emotional and financial support.

Finally, Fulton claims wrongful termination. Fulton claims BBB had a progressive discipline policy, which it failed to follow, and that BBB failed to conduct an adequate investigation into the missing funds. Fulton further claims BBB terminated the employee actually responsible for the missing deposit after Fulton's employment with BBB ceased. BBB contends Fulton fails to state a claim upon which relief can be granted and thus filed this motion to dismiss, pursuant to Rule 12 of the Federal Rules of Civil Procedure.

ORDER – PAGE 3

## II. MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), a court may dismiss an action when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When considering such a motion, the Court must take all facts pled in the complaint as true and grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III. FULTON FAILS TO STATE A CLAIM FOR LOSS OF CONSORTIUM

Loss of consortium, "more accurately described as an element of damage rather than a cause of action," *Whittlesey v. Miller*, 572 S.W.2d 665, 666 n.1 (Tex. 1978), remedies the negligent or intentional impairment of the marital relationship.  Loss of consortium is a derivative claim whereby a third party, "who by reason of his tortious conduct is liable to one spouse for illness or other bodily harm[,] is subject to liability to the other spouse for the resulting loss of" consortium.  RESTATEMENT (SECOND) OF TORTS § 693(1).  Consortium "can generally be defined to include the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage." *Whittlesey*, 572 S.W.2d at 666.  However, a party may recover for loss of consortium only "when a third party causes serious, permanent, and disabling injuries" to his or her spouse.  *Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex. 1990).[2]

_____

[2] *Reagan* addressed a claim for loss of parental consortium, but the Texas Supreme Court later found "no reason to have one rule for parental relationships and another rule for spousal relationships" and was thus "bound by *Reagan* to hold that damages for loss of

Fulton bases her loss of consortium claim on BBB's negligent or intentional conduct – namely, the accusation of theft and drug use and the accompanying recommendation of divorce – and the resulting divorce from her husband Melvin, which he allegedly attributed to the mental and financial stress caused by Fulton's termination.  In other words, Fulton does not rest her claim on any physical injury to Melvin.  Yet, "loss of consortium damages are recoverable only when the non-derivative claim resulted in physical injury," *Motor Express v. Rodriguez*, 925 S.W.2d 638, 640 (Tex. 1996), and Fulton fails to allege any such injury.  Because Fulton failed to allege a physical injury upon which a non derivative claim may be based, she fails to state a claim upon which relief can be granted.  Accordingly, the Court dismisses her loss of consortium claim pursuant to Rule 12(b)(6).

### IV. FULTON STATES A CLAIM FOR ALL OTHER CAUSES OF ACTION

#### A. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffman-La Roche Inc., v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).  Texas courts have determined that "[e]xtreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

---

spousal consortium are not recoverable absent proof of physical injury." *Browning-Ferris, Inc.*, 881 S.W.2d at 294.

intolerable in a civilized community.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). Here, Fulton appears to present two theories under which she seeks recovery for intentional infliction of emotional distress: (1) the "brutal" interrogation by Roger Courson that involved lengthy interrogation into overnight hours, belligerent conduct, blocking of the door, yelling, bellitling, and the accusation of being a thief who had stolen $10,000; and (2) Mike Edwards's interference with Fulton's marriage by encouraging her husband to divorce her, advising him that it would be in Melvin's best interest to divorce her, and finding him an attorney to handle the divorce, all leading to the ultimate dissolution of the marriage.

Because "Texas courts have held that a claim for intentional infliction of emotional distress does not lie for ordinary employment disputes," Fulton's first theory fails to state a claim for intentional infliction of emotional distress. *GTE Southwest, Inc., v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). In *GTE*, the Texas Supreme Court noted that "employment disputes" include "such things as criticism, lack of recognition, and low evaluations, which, although unpleasant and sometimes unfair, are ordinarily expected in the work environment." *Id.* at 613. Claims for intentional infliction of emotional distress are rare in the employment context, because "[t]he level of atrociousness to which [employment disputes] must [rise] is quite high." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 613 (5th Cir. 1999). For example, conduct such as retaliatory termination, severe and curt interrogation, failure to use reasonable care in conducting an investigation, and even terminating an employee after wrongfully accusing the employee of thievery has failed to qualify as

ORDER – PAGE 6

"extreme and outrageous."  *See Southwestern Bell Mobile Systems, Inc., v. Franco*, 971 S.W.2d 52, 54 (Tex. 1998) (finding retaliatory termination resulting from a report of sexual harassment not extreme and outrageous); *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (finding severe and curt tone and manner in the course of an investigation not extreme and outrageous); *Diamond Shamrock Ref. & Mktg. Co., v. Mendez*, 844 S.W.2d 198, 202 (Tex. 1992) (finding a wrongful accusation of theft and subsequent termination not extreme and outrageous); *Tex. Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604 (Tex. App – Dallas, 2002, *n.w.h.*) (finding failure to use reasonable care in conducting an investigation not extreme and outrageous).  In her complaint Fulton alleges Courson conducted a brutal interrogation that involved belligerent conduct, the blocking of a door, yelling, belittling, and calling her a thief who had stolen $10,000.  While no doubt unpleasant, such conduct does not exceed "all possible bounds of decency" and is not "regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman-La Roche Inc.*, 144 S.W.3d at 445.  Accordingly, Fulton fails to state a claim for intentional infliction of emotional distress under her first theory.

        With regard to Fulton's second theory, however, BBB's assertion that Fulton's claim fails for duplicity, lacks merit.  Intentional infliction of emotional distress is a judicially created "gap filler" tort, whose "clear purpose was to supplant existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied." *Hoffman-La Roche Inc.*, 144 S.W.3d at 447.  "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.*

BBB claims Fulton's intentional infliction claims are barred by her allegations of defamation, which rest in part on Mike Edwards's conversation with Fulton's husband. However, reading the complaint in a light most favorable to Fulton, while the accusation of theft and drug use could support a claim for defamation, the suggested divorce is not defamation and can support a claim for intentional infliction of emotional distress. Thus, Fulton's intentional infliction of emotional distress claim is not duplicative of her defamation claim. Accordingly, as to Fulton's second theory, the Court denies BBB's motion.

### B. Defamation

To plead a claim for defamation under Texas law, a plaintiff must allege that the defendant: "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with . . . negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Truth is a complete defense to defamation. *Randall's Food Markets, Inc., v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). Furthermore, employers enjoy "a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of wrongdoing." *Id.* However, such privilege applies only if the communication passes to persons having an interest or duty in the matter. *Id.* The privilege may be overcome by proof that the statement was motivated by actual malice existing at the time of publication. *Id.*

Fulton alleges BBB defamed her in two ways: (1) by accusing her of theft and terminating her without formal notification or the opportunity to respond to the charges; and

(2) by publishing statements to her husband, accusing her of theft and drug use.  BBB seeks dismissal of the first allegation of defamation only, arguing that it did not publish a defamatory statement for which Fulton is entitled to relief.  Specifically, BBB contends that neither the failure to notify or provide the opportunity to respond, nor reporting Fulton's termination to the Texas Workforce Commission is actionable.

When entertaining a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  *Conley v. Gibson*, 355 U.S. 41, 46 (1957).  Here, Fulton alleges BBB published statements to former assistants that Fulton had been terminated for theft.  Fulton further alleged that BBB failed to notify her of her termination and failed to provide an opportunity for her to respond to the allegations of theft.  Fulton's allegations that BBB did not notify her or give her an opportunity to respond satisfy the third prong of the test – namely, that BBB acted negligently in publishing the statements.  Finally, Fulton alleges harm resulting from the published statements.  Thus, taking all facts pled in the complaint as true, and "indulg[ing] all reasonable inferences from these allegations in . . . [Fulton's] favor,"  *McLaughlin v. Boston Harbor Cruise Lines, Inc.*, 419 F.3d 47, 50 (1st Cir. 2005), Fulton states a claim upon which relief can be granted.  Accordingly, the Court denies BBB's motion to dismiss Fulton's defamation claim.

### C. Wrongful Termination

Finally, BBB contends Fulton's wrongful termination claim fails because Fulton was an at-will employee, and because Fulton failed to allege a violation of any state or federal

ORDER – PAGE 9

antidiscrimination statutes. "The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary." *Federal Express Corp. V. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993). However, "[t]he employment-at-will doctrine has always been subject to specific contractual agreement defining an exception." *Goodyear Tire & Rubber Co. v. Portilla*, 879 S.W.2d 47, 51 (Tex. 1994). Moreover, Texas courts have recognized that employment personnel manuals, or "handbook[s,] may modify the at-will relationship if [they] *specifically and expressly* curtail[] the employer's right to terminate the employee." *Vida v. El Paso Employee's Federal Credit Union*, 885 S.W.2d 177 (Tex. App. – El Paso 1994, no writ) (emphasis in original); *cf. Federal Express Corp.*, 846 S.W.2d at 283 ("A disclaimer in an employee handbook . . . negates any implication that a personnel procedures manual places a restriction on the employment at will relationship."). Because Fulton's complaint alleges that BBB had a progressive discipline policy it failed to follow, choosing instead to terminate her, Fulton's claim for wrongful termination survives this motion to dismiss.[3]

Signed October 30, 2006.

David C. Godbey
United States District Judge

---

[3] The Court obviously has no idea whether such a claim is factually viable. Its ruling here is confined to whether Fulton's allegations state a claim.

ORDER – PAGE 10